# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
### No. 18-1290V
### Filed: August 27, 2020
(Not to be published)

```
* * * * * * * * * * * * * * * * * * * * * * * *
                                    *
DANIEL C. STRATTON,                 *
                                    *
            Petitioner,             *        Findings of Fact; Onset;
                                    *        Shoulder Injury Related to Vaccine
        v.                          *        Administration ("SIRVA").
                                    *
SECRETARY OF HEALTH                 *
AND HUMAN SERVICES,                 *
                                    *
            Respondent.             *
                                    *
* * * * * * * * * * * * * * * * * * * * * * * *
```

*Ramon Rodriguez, III, Sands Anderson PC, Richmond, VA, for Petitioner.*
*Kimberly Davey, U.S. Department of Justice, Washington, DC, for Respondent.*

## RULING ON ONSET[1]

**Oler**, Special Master:

On August 24, 2018, Daniel Stratton ("Mr. Stratton" or "Petitioner") filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300aa-10, *et seq.*[2] (the "Vaccine Act" or "Program"). The petition alleges that the influenza ("flu") vaccine

---

[1] Because this unpublished Ruling contains a reasoned explanation for the action in this case, I intend to post it on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Ruling will be available to anyone with access to the internet.** However, the parties may object to the Ruling's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole Ruling will be available to the public. *Id*.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

Mr. Stratton received on August 27, 2015 caused him to suffer a Shoulder Injury Related to Vaccine Administration ("SIRVA").  Pet. at 1.

During the pendency of this matter, Petitioner submitted one affidavit that he authored as well as an affidavit from his wife, Donna Stratton.  Exs. 1, 2.

I held a hearing on August 5, 2019 in Washington, DC via WebEx, to determine the date of onset of Petitioner's shoulder pain.  Dr. Ramon Rodriguez appeared on behalf of Petitioner and Ms. Kimberly Davey appeared on behalf of Respondent.  I heard testimony from Petitioner and his wife.

After carefully considering the medical records, affidavits, and documentary evidence, I find that Petitioner's right shoulder pain began the day of his vaccination.

## I.      Procedural History

On August 24, 2018, Petitioner filed a petition alleging that he suffered from SIRVA as a result of a flu vaccine administered on August 27, 2015.  Pet., ECF No. 1.  Petitioner filed medical records on September 7, 2018.  Exs. 3, 4, 5, 6, 7, 8, 9.  He filed additional medical records on October 9, 2018.  Exs. 10, 11, 12.  He filed a statement of completion on that same day.  ECF No. 9.

After a status conference on February 19, 2019, Petitioner filed additional medical records on April 23, 2019.  Exs. 13, 14, 15, 16, 17, 18.  He also filed a worker's compensation file.  Ex. 19.  He filed additional medical records on May 2, 2019 (Ex. 23), July 22, 2019 (Ex. 24), and October 8, 2019 (Ex. 25).

On October 22, 2019, Respondent filed a Rule 4(c) Report.  ECF No. 37.  Respondent's report states that Petitioner has not demonstrated that he suffered from a SIRVA Table claim, and further that he has not provided evidence that satisfies his burden of proof under *Althen v. Sec'y of Health & Human Servs.*, 418 F.3d 1274 (Fed. Cir. 2005).  Resp's Rept. at 9-11.  On October 31, 2019, this case was reassigned from the SPU to my docket.  ECF No. 39.

I held a status conference on November 8, 2019 where I asked Ms. Davey to speak with her client and inquire whether an onset determination would help advance the case toward a resolution.  *See* Scheduling Order from November 8, 2019, ECF No. 40.  I further stated that if "an entitlement hearing is ultimately necessary, then I do not want to conduct a separate fact hearing and would want to address all issues at a single hearing." *Id.*

On November 29, 2019, Respondent filed a status report wherein he indicated that a fact hearing "would likely be helpful in resolving the question of onset and dispositive in deciding the case." ECF No. 41.  Respondent further stated that he is "unable to definitively state whether a fact hearing would change respondent's position until he hears the proffered testimony and evaluates the court's onset ruling." *Id.*

I conducted a fact hearing on August 5, 2020 in Washington, DC.  This matter is now ripe for adjudication regarding onset.

## II.    Petitioner's Relevant Medical Records

Petitioner was born in 1957.  He was 58 years old on August 27, 2015, when he received the allegedly causal flu vaccination in his right deltoid at his place of employment.  Ex. 8 at 1.  Petitioner's medical conditions prior to vaccination included prostate cancer and left shoulder pain.

During the months of August and September 2015, Petitioner attended weekly radiation treatments.  Ex. 24.  He did not mention right shoulder pain during these treatment visits.

On November 6, 2015, Petitioner visited Dr. Timothy Kitchen at Westfield Family Physicians, for a "status check of chronic diseases." Ex. 5 at 129.  Petitioner mentioned chronic fatigue, leg edema, and leg cramps to Dr. Kitchen.  *Id.*  There is no indication in this record that Petitioner discussed right shoulder pain.  *See id.*

Petitioner went to an acute care visit on November 11, 2015 where he presented to physician assistant Natalie Pierce with chest congestion, nasal congestion, and sore throat.  Ex. 5 at 134.  Petitioner was assessed with chronic obstructive pulmonary disease with acute exacerbation and was prescribed antibiotics.  *Id.* at 135.  There is no indication in the medical records that Petitioner mentioned right shoulder pain at this visit.

On January 18, 2016, Petitioner presented to Dr. Kitchen for shoulder pain that had been present for "several months." Ex. 5 at 137.  The history of present illness (HPI) section of the record states, "Gradual onset over time, maybe since around time of flu shot which was 8/15 but not feeling like it was from that." *Id.*  Petitioner was administered a steroid injection into his right shoulder at this visit.  *Id.* at 139.

Petitioner visited Dr. Timothy Gorman (also with Westfield Family Physicians) on March 19, 2016.  The purpose of the visit is listed as right shoulder pain.  Ex. 5 at 155.  On that day, Petitioner was taking the plow off of his truck and slipped and fell on his right shoulder.  *Id.*  The HPI section of the record states that the right shoulder pain "is a chronic pain dating back to last late summer." *Id.*  The record further states that Petitioner

> attributes it to getting a flu shot but isn't sure if that really had anything to do with it.  That is the time it started, the shot was given on August 27.  Ever since, he has had right lateral shoulder pain over the region of the deltoid radiating down into the middle of his upper arm.

*Id.*  Dr. Gorman assessed Petitioner with pain in the right shoulder and prescribed physical therapy.  *Id.* at 156.

Petitioner began PT on April 1, 2016.  At his initial visit, Petitioner reported "chronic shoulder pain with increase in symptoms since October that have been progressing." Ex. 7 at 2.  Petitioner attended three PT sessions and was discharged from PT on May 11, 2016.  *Id.* at 10.

3

On June 1, 2016, Petitioner visited Dr. Brian Mata (an orthopedist) at Lakeshore Orthopedic Group for a reevaluation of his right shoulder. Ex. 4 at 13. The HPI states Petitioner "believes that this started with a vaccination in the right shoulder." *Id.* He was assessed with right shoulder pain due to impingement, bursitis, and a tear of the rotator cuff. *Id.* at 14. Dr. Mata discussed the possibility of surgery to repair Petitioner's rotator cuff. *Id.*

On June 29, 2016, Petitioner returned to Dr. Mata for a follow up. Ex. 4 at 10. Petitioner again related that he believed his shoulder pain was a result of his vaccination. *Id.* The record specifically notes Petitioner's belief was due to "the timing of the vaccine and his pain and issues." *Id.* Dr. Mata administered a corticosteroid injection and recommended PT. *Id.*

Petitioner began PT on July 8, 2016. Ex. 7 at 11. During this initial appointment, Petitioner stated that his "symptoms presented after a flu shot in the R shoulder in August." *Id.* Petitioner attended a total of four PT sessions and was discharged on August 31, 2016. *Id.* at 17. During his last PT session, Petitioner noted that he had experienced little change in his symptoms. *Id.*

There are no further medical records filed that are pertinent to the issue of onset of Petitioner's right shoulder pain.

### III.   The Petition, Affidavits, and Documentary Evidence

The Petition filed in this matter states that Petitioner experienced a SIRVA following his August 27, 2015 flu vaccination. Pet. at 1.

#### A.   Affidavits, Testimony, and Documentary Evidence

##### 1.   <u>Affidavit of Mr. Daniel Stratton Pertinent to the Issue of Onset</u>

In support of his Petition, Mr. Stratton signed his affidavit on August 23, 2018. Ex. 1. In it, he stated that he received the flu vaccine in his right shoulder at his place of work on August 27, 2015. *Id.* at 1. He did not have any right shoulder pain before the shot, but according to Petitioner he experienced some discomfort in his right shoulder shortly after getting this vaccination. *Id.* At the time, Petitioner did not think much of it because he "thought it was just the typical discomfort you might get from having an injection." *Id.* The pain did not dissipate, and over the "days, weeks, and months" following his vaccination, Petitioner experienced a progression in symptoms. *Id.* Petitioner tried over-the-counter pain medication and shoulder exercises to help alleviate his pain. *Id.* at 2.

Petitioner also described the pain he experienced when he tried to put his arm on the church pew and noted that he had to sleep with his right arm over his head at night due to the pain. Ex. 1 at 2.

Petitioner stated that he mentioned his arm pain to Dr. Kitchen when he went in for appointments, but indicated that "the providers didn't seem to give it much thought" and that they "kind of blew [him] off." Ex. 1 at 2. Petitioner indicated that when he visited Dr. Kitchen on

4

January 18, 2016, his shoulder was extremely painful. *Id.* He further stated that he told Dr. Kitchen the symptoms started right after his flu vaccine, but that Dr. Kitchen tried to convince him otherwise. *Id.* at 3.

### 2.   Affidavit of Ms. Donna Stratton Pertinent to the Issue of Onset

Ms. Donna Stratton is Petitioner's wife. She signed her affidavit, signed on August 23, 2018. Ms. Stratton noted that after Petitioner received his flu vaccine, he had difficulty doing things around the house that he did previously without any problems. Ex. 2 at 1. According to Ms. Stratton, Petitioner mentioned that his right shoulder was a little uncomfortable after his flu vaccine. *Id.*

Ms. Stratton stated that at first, she did not think anything of her husband's shoulder pain, but as time went on, she noticed he had more and more difficulty with it. Ex. 2 at 1. Ms. Stratton noticed that regular activities caused Petitioner pain. *Id.* at 2. She also observed that he started doing shoulder exercises. *Id.* She also observed that he took over-the-counter pain medication, which she stated "did not work all that well." *Id.* at 3. Ms. Stratton stated that the pain in her husband's shoulder progressed as time passed. *Id.* at 2. She indicated that by January 2016, Petitioner was having difficulty moving his shoulder. *Id.*

### 3.   Testimony of Mr. Daniel Stratton Pertinent to the Issue of Onset

Petitioner testified that he received his flu vaccine at work in an outdoor tent that his employer had set up. Tr. at 35. Petitioner stated that he felt discomfort when he received the shot. *Id.* at 36. He described this initial discomfort as a slight aching. *Id.* He testified that this particular vaccination was administered higher in his arm than normal. *Id.* at 95-96.

With respect to the pain he experienced after vaccination, Petitioner further testified that "[a]s the days progressed, things seemed to get worse." Tr. At 35.   Within one month, Petitioner started to notice that he was having difficulty moving his arm. *Id.* at 37, 52. During that time period or shortly after, Petitioner also noted that he experienced discomfort at church when he tried to put his arm on the pew. *Id.* He stated, "it was all I could do to get my arm lifted up onto the seat. Then once I did get it up there, I would have to use my other arm to get it back down." *Id.* At no point after he received his shot did the pain go away. *Id.* at 53-54.

Petitioner testified about his radiation treatments that he received during this timeframe. He stated:

> Well, basically you walk in, you sign in, you sit down. They call you. You walk in to where they do the radiation. They have you lay down on a table. They spin, do whatever it is they do. You are back off the table, go ahead in the bathroom because your bladder is full and overflowing, and you are out of there. There's no questioning about your health. There's no questioning about anything. It's just you are there to do the process. You are in and you are out.

Tr. at 39.  He testified that he did not have conversations about his general health during these appointments.  *Id.* at 39-40.

Petitioner testified that he believes he spoke with his doctor about shoulder pain in November and that the doctor "kind of blew it off like it was no big deal."  Tr. at 40, 45, 46, 79. Petitioner also discussed his visit from January.  According to Petitioner, his doctor (Dr. Kitchen) did not believe Petitioner's shoulder pain could be caused by the flu shot.  *Id.* at 41.  Petitioner disagreed with the notation in the January visit with Dr. Kitchen indicating he (Petitioner) did not believe his pain was from the flu shot.  *Id.* at 49.  Petitioner testified that "the whole problem started after the flu shot."  *Id.*

Petitioner looked on the internet in the October/November timeframe and found articles discussing the possible connection between vaccination and SIRVA.  Tr. at 41.

### 4.  __Testimony of Ms. Donna Stratton__

Although Ms. Stratton testified at the onset hearing, she had recently sustained a concussion and had some difficulty with her memory.  The following exchange took place:

> THE COURT: Ms. Stratton, let me jump in a second. Ma'am, how is your memory of the events back in 2015, as you sit here today?

> THE WITNESS: I vaguely remember some of it. And of course, with this concussion I had, I have got -- it's hard to remember everything, because --

> THE COURT: And that's understandable. So when you wrote your affidavit, how was your memory when you wrote it back then?

> THE WITNESS: It was good.

> THE COURT: Are you more comfortable with what's in the affidavit or what you are testifying to here today?

> THE WITNESS: In the affidavit.

Tr. at 33.  Based on this testimony, I have given more weight to Ms. Stratton's affidavit than to the testimony she provided at the onset hearing.

### IV.    **Legal Standards Regarding Fact Finding**

Petitioner bears the burden of establishing her claim by a preponderance of the evidence. 42 U.S.C. § 300aa-13(1)(a).  A petitioner must offer evidence that leads the "trier of fact to believe that the existence of a fact is more probable than its nonexistence before [he or she] may find in favor of the party who has the burden to persuade the judge of the fact's existence."  *Moberly v. Sec'y of Health & Human Servs.*, 592 F.3d 1315, 1322 n.2 (Fed. Cir. 2010) (citations omitted).

In order to make a determination concerning factual issues, such as the timing of onset of petitioner's alleged injury, the special master should first look to the medical records. "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium." *Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993); *Lowrie v. Sec'y of Health & Human Servs.*, No. 03-1585V, 2006 WL 3734216, at *8 (Fed. Cl. Spec. Mstr. Nov. 29, 2006). Medical records created contemporaneously with the events they describe are presumed to be accurate and complete. *Doe/70 v. Sec'y of Health & Human Servs.*, 95 Fed. Cl. 598, 608 (2010).

Contemporaneous medical records generally merit greater evidentiary weight than oral testimony; this is particularly true where such testimony conflicts with the record evidence. *Cucuras*, 993 F.2d at 1528; *see also Murphy v. Sec'y of Health & Human Servs.*, 23 Cl. Ct. 726, 733 (1991), *aff'd*, 968 F.2d 1226 (Fed. Cir. 1992) (citing *United States v. United States Gypsum Co.*, 333 U.S. 364, 396 (1947) ("It has generally been held that oral testimony which is in conflict with contemporaneous documents is entitled to little evidentiary weight")). "Written documentation recorded by a disinterested person at or soon after the event at issue is generally more reliable than the recollection of a party to a lawsuit many years later." *Reusser v. Sec'y of Health & Human Servs.*, 28 Fed. Cl. 516, 523 (1993).

However, there are situations in which compelling oral testimony may be more persuasive than written records--for instance in cases where records are found to be incomplete or inaccurate. *Campbell*, 69 Fed. Cl. at 779 ("like any norm based upon common sense and experience, this rule should not be treated as an absolute and must yield where the factual predicates for its application are weak or lacking"); *Lowrie*, 2005 WL 6117475, at *19 ("Written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent") (quoting *Murphy*, 23 Cl. Ct. at 733).

When witness testimony is used to overcome the presumption of accuracy afforded to contemporaneous medical records, such testimony must be "consistent, clear, cogent, and compelling." *Sanchez v. Sec'y of Health & Human Servs.*, No. 11-685V, 2013 WL 1880825 (Fed. Cl. Spec. Mstr. Apr. 10, 2013) (citing *Blutstein v. Sec'y of Health & Human Servs.*, No. 90-2808V, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)). In determining the accuracy and completeness of medical records, the Court of Federal Claims has listed four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Human Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1334 (Fed. Cir. 2014). A special master making a determination whether to afford greater weight to contemporaneous medical records or other evidence, such as testimony at a hearing must have evidence suggesting the decision was a rational determination. *Burns by Burns v. Sec'y of Health & Human Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993).

## V.      Findings of Fact

The issue to be addressed is when Petitioner's symptoms of right shoulder pain began. Petitioner has the burden of demonstrating the facts necessary for entitlement to an award by a preponderance of the evidence.  § 300aa-12(a)(1)(A).  Under that standard, the existence of a fact must be shown to be "more probable than its nonexistence." *In re Winship*, 397 U.S. 358, 371 (1970) (Harlan, J., concurring).  In light of the medical records, affidavits, and other documentary evidence presented in this case, and after my careful examination of the record as a whole, I find there is preponderant evidence that the onset of Petitioner's symptoms of right shoulder pain began on August 27, 2015, the day of vaccination.

In his affidavit and during his testimony, Petitioner attests that he experienced pain the same day that he received his flu vaccination.  I find his statements on this point to be credible, and further find this evidence is corroborated by his medical records.

Petitioner attended several radiation visits and two medical appointments between the date of vaccination and the date the medical records reflect that he complained of right shoulder pain. I note that I would not expect Petitioner to discuss shoulder pain at radiation visits or even at an acute care appointment for aggravated COPD.  *See, e.g.*, *Williams v. Sec'y of Health and Human Servs.*, 2019 U.S. Claims LEXIS 176 at *23 (Fed. Cl. Spec. Mstr. Jan. 31, 2019) (finding onset of SIRVA within 48 hours despite four intervening medical encounters that did not reference shoulder pain because the medical appointments "were for specific medical concerns unrelated to petitioner's left shoulder concern.").

The appointment on November 6, 2015 was not with a specialist.  This medical appointment was with Dr. Kitchen (Petitioner's PCP) for a general check-up. Ex. 5 at 129. A visit with a PCP seems to be a more likely time to discuss general medical concerns.  Petitioner testified that he did mention his right shoulder pain at this visit, and Dr. Kitchen told him that a shoulder injury resulting from a vaccination was "not possible."  *See* Tr. at 79.  However, there is no such notation in the medical records.  While I afford great weight to contemporaneously-created medical records, I find that the weight of the evidence in this case preponderates in Petitioner's favor, even considering the November 6, 2015 visit.  This is due to the number of records after this November 6 visit where Petitioner consistently attributes the start of his right shoulder pain to the date of his flu vaccination.

Petitioner visited his PCP on January 18, 2016 indicating he had shoulder pain that had been present since around the time of his flu shot.  Ex. 5 at 137.  Although this record notes Petitioner "was not feeling like it was from [the shot]" this medical record nonetheless places onset of shoulder pain around the date of vaccination.

Similarly, when Petitioner visited Dr. Gorman on March 19, 2016, he attributed his right shoulder pain to his August 27 flu vaccination. Ex. 5 at 155.  Further, during his initial PT session on April 1, 2016, Petitioner described "chronic shoulder pain with increase in symptoms since October that have been progressing." Ex. 7 at 2.  On June 1, 2016, Petitioner told Dr. Mata that he believed right shoulder pain "started with a vaccination in the right shoulder." Ex. 4 at 13.  He made similar statements to Dr. Mata on June 29, 2016.  *See* Ex. 4 at 10.  Finally, at the initial

appointment during his second round of PT, Petitioner stated that his "symptoms presented after a flu shot in the R shoulder in August." Ex. 7 at 11.

I have credited Petitioner's consistent statements of right shoulder pain following vaccination that have been documented in his medical records.  Accordingly, I find these records support Petitioner's contention that he experienced pain on the same day as his flu vaccination.

## VI.    Conclusion

I find that the affidavits, testimony, and medical records work in concert to provide preponderant evidence that Petitioner's right shoulder pain began on August 27, 2015.

The following is therefore ORDERED:

By no later than **Friday, October 9, 2020**, Petitioner and Respondent shall file a joint status report updating me on their proposed next steps in the case based on the facts articulated in this ruling.

**IT IS SO ORDERED.**

                                        **s/ Katherine E. Oler**
                                        Katherine E. Oler
                                        Special Master